**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MICHAEL J. MARTIN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TRICAM INDUSTRIES, INC., HOME DEPOT SUPPLY, INC., HOME DEPOT USA, INC.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION**<br><br>**NO. 17-12578-TSH** |

**ORDER AND MEMORANDUM ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS (Docket Nos. 33 & 36)**

**May 17, 2019**

**HILLMAN, D.J.**

　　Michael J. Martin ("Plaintiff") brought this products liability claim against Tricam Industries, Inc., Home Depot Supply, Inc. and Home Depot USA, Inc. ("Defendants") after a ladder he was standing on collapsed, causing severe injuries. Defendants moved for summary judgment on all claims because they believe that Plaintiff's deposition testimony has undermined his theories of defect and causation. (Docket No. 33). Defendants have also moved for sanctions. (Docket No. 36). For the reasons stated below, Defendants' motions are ***denied***.

**Background**

　　In September 2014, Plaintiff was standing on a ladder to remove a tree limb. The ladder is manufactured by Tricam and exclusively sold by Home Depot.

In his Complaint, Plaintiff asserted that while he was standing on the ladder, a "limb fell from the tree, bounced off the ground, and made contact with the ladder." (Docket No. 1-1 ¶ 15). According to Plaintiff, "[d]ue to negligent design and manufacture of the ladder, the rivets used to hold the movable joints in place failed to keep the ladder locked in place and the ladder fell out from underneath Mr. Martin, causing him to fall." *Id.* ¶ 16. Plaintiff alleged in his Complaint that the ladder was therefore negligently designed because it could not withstand minor and foreseeable impacts. *Id.* ¶¶ 11-12.

At his deposition, however, Plaintiff claimed that he did not witness the branch fall because, immediately after he cut the branch, the "ladder was just gone." Martin Dep. 27:20-24. Further, Plaintiff said that he never claimed that the branch struck the ladder. *Id.* 28:6-8.

## **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).  Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).  When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

Local Rule 56.1 requires that motions for summary judgment "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page refences to affidavits, depositions and other documentation.  Failure to include such a statement constitutes grounds for denial of the motion." L.R. 56.1; *see also United States v. McNicol*, 829 F.3d 77, 81 (1st Cir. 2016) (noting that failures to conform with local rules "have consequences"); *Zimmerman v. Puccio*, 613 F.3d 60, 63 (1st Cir. 2010) (discussing importance of L.R. 56.1 and applying its sanctions).[1]

**Discussion**

---

[1] Defendants have failed to comply with local rules as they did not include a statement of material facts to accompany their motion.  While their memorandum in support of their motion contains a facts section, this is not enough to comply with the rule. *See, e.g.*, *United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 128 (D. Mass. 2016) (rejecting claim that statement of facts incorporated into briefing satisfies L.R. 56.1).  For this reason, it is within the Court's discretion to dismiss Defendants' motion.  Because the Court can assess the issues at bar based on its review of the record, it will overlook Defendants' failure to observe local rules.

Defendants essentially claim that Plaintiff cannot prove defect or causation—two essential elements of his claim—because he has recanted the only theory of liability offered in his Complaint.

"The fundamental purpose of our pleadings rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotation marks omitted). In *Torres–Rios v. LPS Labs., Inc.*, the complaint asserted a product liability claim through facts demonstrating that the product was defective because its warnings were inadequate. 152 F.3d 11, 12-15 (1st Cir. 1998). In opposing summary judgement, the plaintiffs then tried to rely on a new theory, that the product was defectively designed, and argued that the theory was implicitly pled in their complaint. *Id.* at 15-16. The First Circuit affirmed the district court's refusal to allow the plaintiffs to rely on the new theory because allowing such a change after discovery was completed "unquestionably would prejudice defendant, whose focus until that time had been on the adequacy of the warning labels and not on the costs and benefits of the product itself." *Id.* at 16.

Similarly, in *Martinez v. Petrenko*, the plaintiff asserted the defendant violated the Fair Labor Standards Act for failure to pay overtime. In a FLSA claim, "the nexus to commerce is an element of the claim, without which there is no entitlement to recovery, and Martinez sought to change entirely the theory of establishing a nexus." 792 F.3d 173, 180 (1st Cir. 2015). The First Circuit held that this "belated change of the facts Martinez would use to establish that nexus implicates precisely the type of unfair misdirection at issue in cases such as *Torres-Rios*." *Id.* This was especially appropriate where "all of the facts upon which Martinez belatedly sought to demonstrate [the new theory of establishing a nexus] were known to him before he filed his complaint." *Id.*

As noted above, in his Complaint, Plaintiff asserted that a "limb fell from the tree, bounced off the ground, and made contact with the ladder." (Docket No. 1-1, ¶ 15). However, Plaintiff additionally claimed that, "[d]ue to the negligent design and manufacture of the ladder, the rivets used to hold the movable joints in place failed to keep the ladder locked in place and the ladder fell out from underneath Mr. Martin, causing him to fall." *Id.* ¶ 16. At his deposition Plaintiff claimed that he did not witness the branch fall because after he cut the branch, the "ladder was just gone." Martin Dep. 27:20-24.

This admission does not preclude finding causation or a defective product as Defendants suggest. Indeed, the ladder giving out without the tree hitting it may even support a finding that the product was defective. In addition, two witnesses supplied affidavits testifying that "the ladder collapsed from underneath Mr. Martin suddenly and without warning . . . as if the ladder simply exploded underneath him" and that nothing touched the ladder before it collapsed. (Docket No. 41-4 ¶¶ 5-7); *see also* Docket No. 41-5. Finally, based on his review of the affidavits and his examination of the ladder, Plaintiff's expert concluded:

> Based on my review the ladder was defective and unreasonable dangerous because the rivet used to attach the spreader to the left front rail of the ladder failed. The shop head on the rivet **sheared** in the normal course of use, the ladder became unstable and collapsed. The rivet was used to attach critical components that provide stability while persons are working aloft on the ladder. The ladder becoming unstable and collapsing as a result of the failed rivet is foreseeable by the manufacturer since the ANSI A14.5 require stability test [sic] on fully assembled stepladders to be satisfactory. The manufacturer failed to design the ladder rivet system in way of the spreader connection – left front rail free of defects. The failure of rivet shop head is covered by national consensus standards, industry practices and is therefore foreseeable making the ladder unreasonable dangerous and unsafe.

(Docket No. 41-3, at 30) (emphasis in original).

Thus, Defendants' claims that Plaintiff cannot prove defects or causation is incorrect. The evidence to support his claims is perhaps slightly different than what was foreshadowed by the

5

pleadings. However, unlike in *Torres–Rios* where the plaintiff attempted to switch from an inadequate warning to defective design theory of liability, Plaintiff has continuously asserted that the ladder was defectively designed because the sheared rivet failed to support him. *Cf. Martinez*, 792 F.3d at 180 ("Martinez sought to *change entirely* the theory of establishing a nexus." (emphasis added)).

Because Plaintiff has not sought to change his central theory of liability and causation, I also note that the purpose of confining a plaintiff to the claims in his complaint is not undermined. The spirit of that rule is to protect a defendant's right to know the nature of the claims asserted against him. *See id.* (noting that defendants cannot be forced to "engage in discovery based not on what was pleaded but also on what might have been pleaded"). Here, I find that Defendants had ample notice of the claims asserted against them. From the beginning of this litigation, Defendants understood that Plaintiff alleged their product was defectively designed because the rivet sheared, which caused him injury. *Cf. Torres–Rios*, 152 F.3d at 16 (noting the prejudice that would arise from permitting change in theory of liability at summary judgment stage where defendant's "focus until that time had been on the adequacy of the warning labels and not on the costs and benefits of the product itself").

## Conclusion

For the reasons stated above, Defendants' motions for summary judgment and for sanctions (Docket Nos. 33 & 36) are ***denied***. This case is set for trial on Monday, December 9, 2019 at 9:00 a.m. The final Pretrial Conference shall be on September 11, 2019 at 3:00 p.m.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**